**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| JUAN CRENA, | CASE NO. |
| Plaintiff, | CLASS ACTION |
| vs. | JURY TRIAL DEMANDED |
| NAVITELIA INDUSTRIES, INC., d/b/a OXYBREATH PRO, and d/b/a DRESIDE, | |
| Defendant. _____/ | |

**CLASS ACTION COMPLAINT**

Plaintiff Juan Crena ("Crena"), individually and on behalf of all others similarly situated, by and through his attorneys, sues Defendant Navitelia Industries, Inc., d/b/a OxyBreath Pro and d/b/a Dreside ("Navitelia"), for damages and equitable relief and, in support thereof, alleges the following:

**INTRODUCTION**

This is a class action lawsuit for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Navitelia, who appears to sell exclusively protective equipment necessary during the COVID-19 pandemic, illegally sent countless unsolicited, automated messages to Crena and other similarly situated putative class members, in violation of the TCPA.

**PARTIES**

1. Plaintiff is an individual who resides in Broward County, Florida.

2. Defendant is a corporation that is incorporated in Florida and has its principal place of business in Miami-Dade County, Florida. Upon information and belief, Navitelia does business

worldwide through its online stores at *oxybreath.club* and *dreside.com*. Navitelia has two physical locations in Florida: an office at 601 NE 36th St, Apt 1505, Miami, FL 33137 and a warehouse at an unspecified address in Homestead, Florida.[1]

## JURISDICTION AND VENUE

3. This is a class action lawsuit for damages within the jurisdiction of this Court.

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the TCPA, 47 U.S.C. § 227.

5. This Court also has jurisdiction because at least one class member is from a state different from Defendant and Plaintiff is seeking up to $1,500 per violation of the TCPA, which, when aggregated among the thousands of proposed class members, exceeds the $5,000,000 threshold for jurisdiction under the Class Action Fairness Act.[2]

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district. Additionally, venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district. Moreover, Defendant's wrongful acts have impacted the general public of this district, and the ends of justice require that parties residing in other districts be brought before this Court.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

*Overview of the TCPA*

7. In 1991, faced with nationwide complaints over the volume of robocalls being received by American consumers, Congress enacted the TCPA to address the companies' abusive solicitation through automated calling.

---

[1] See https://dreside.com/pages/contact-us (last visited 07/02/2020).
[2] In fact, Navitelia's website states it has reached over 50,000 "Happy Clients," making the class potentially that large.

8. The TCPA prohibits, among other things, making any call to a cellphone using an "automatic telephone dialing system" ("ATDS" or "Autodialer"), unless it is made for emergency purposes or with the express consent of the party called.

9. The TCPA defines an Autodialer as any "equipment which has the capacity: (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

10. According to the Federal Communications Commission ("FCC"), which is charged with implementing the Act, these calls are prohibited because they can be costly and inconvenient.

11. The FCC has recognized that "Robotexts" generated through an ATDS are also prohibited under the TCPA.

12. Any equipment that has the capacity to "store or produce telephone numbers to be called, using a random or sequential number generator," satisfies the definition of an ATDS, even if that capacity is not used.

13. Under the TCPA and implementing regulations, the burden is on defendants like Navitelia to demonstrate that Crena and the putative class of plaintiffs provided express consent within the meaning of the statute.

*The Plaintiff and Navitelia's Texts*

14. At all relevant times, Crena was the owner of cellular phone number 1-xxx-xxx-0376 (the "0376 Number").

15. On or before April 15, 2020, Navitelia sent at least two but not more than five unsolicited text messages to the 0376 Number regarding its products.

16. Prior to Navitelia sending Crena unsolicited text messages about its products, Crena had never reached out to Navitelia for information, given out his phone number to it, asked about its products, done business with it, or otherwise had known about Navitelia.

17. On April 15, 2020, Navitelia sent an unsolicited text message to the 0376 Number regarding its products. *See* **Image 1**.

18. On April 19, 2020, Navitelia sent an unsolicited text message to the 0376 Number regarding its products. *See* **Image 2**.



19. On April 20, 2020, Navitelia sent an unsolicited text message to the 0376 Number regarding its products, to which Crena replied "Stop." *See* **Image 3**.

20. On May 21, 2020, Navitelia sent an unsolicited text message to the 0376 Number regarding its products, to which Crena again replied "Stop." *See* **Image 4**.



21. When Crena replied "stop," Crena explicitly conveyed to Navitelia that he did not wish to be subscribed to or receive its automatic text messages.

22. On May 21, 2020, Navitelia sent a text message to Crena stating that he had "successfully unsubscribed and [would] no longer receive any text messages." *See* **Image 5**.

23. Notwithstanding this "un-subscription," on May 24, 2020, Navitelia sent another text message to the 0376 Number at 02:07 AM, which woke Crena up, promoting its "stay safe" products, such as washable masks and gloves. *See* **Image 6**.

**Image 5**  **Image 6**



24. On May 28, 2020, Navitelia also sent an email to Crena advertising its products. On information and belief, Navitelia emailed Crena several other times.

25. On June 4, 2020, Navitelia sent Crena another text message to the 0376 Number, promoting its N-95 and KN-95 masks, 3-ply cotton masks, and hand sanitizer. *See* **Image 7**.

**Image 7**  **Image 8**



26. On June 10, 2020, Navitelia again sent another text message to the 0376 Number, identical to the June 4, 2020 one. *See* **Image 8**, above.

27. On June 13, 2020, Navitelia sent another text message to the 0376 Number, which included a "coupon" to save 10% on its COVID-19 related products. *See* **Image 9**.

28. On June 15, 2020, Navitelia again sent the text message promoting its 10% savings coupon to the 0376 Number. *See* **Image 10**.



29. In a two-month span, beginning in mid-April up until mid-June 2020, Navitelia has contacted and solicited business from Crena more than a dozen times. Navitelia's relentless texts to Crena, without his authorization, invaded Crena's privacy and were an intense interference with his life and business.

30. Specifically, Crena is a real estate professional and the constant unsolicited texts from Navitelia distract him from the analysis he does of his client's properties. Further, the random non-stop texts distract him during showings and calls with his clients and other agents.

31. All of Navitelia's text messages were sent to Crena within the timeframe relevant to this class action.

32. Navitelia's text messages constitute telemarketing because they encourage the future purchase of or investment in property, goods, or services.

33. Navitelia and its agents sent the Robotexts from different phone numbers using a random number generator. The numbers used by Navitelia include but are not limited to 202-547-1491, 786-756-7420, 786-699-8274, 786-699-8939, 786-755-0582, 786-757-0595, and the short code number 82149. All of these numbers are controlled or owned by Navitelia or its agents.

34. On information and belief, Navitelia contacts consumers in association with a text marketing company, which acts as an agent of Navitelia. In association and coordination with the text marketing company, Navitelia uses an automated random number generating system in order to text consumers from hundreds, if not thousands, of phone numbers. This is a common practice used by TCPA violators to circumvent the fact that, as consumers receive the unsolicited marketing texts, consumers tend to block the number from where the text came from. By having these texts always come from a different phone number, Navitelia and its agents ensure that the texts land in the consumer's cell phone, thereby invading their privacy.

35. The impersonal and generic nature of Navitelia's text messages also reflect that they were sent via an ATDS. In fact, when looking at some of the texts received by Crena, one can see that several of them are identical to each other.

36. Further, a look at the texts reflects that they are not written in natural language or in a way people usually write, but rather that they are machine-created.

37. On information and belief, the platform used by Navitelia has the capacity to generate or store random or sequential numbers or to dial sequentially or randomly at the time the text is sent, and to send them *en masse*, in an automated basis, without human intervention.

38. Additionally, none of the phone numbers from which Crena received texts are the contact numbers for Navitelia in its websites, further supporting the use of an ATDS.

39. Moreover, Navitelia's messages contained direct links to unsecure websites that jeopardized consumers' personal information, making them vulnerable to hackers. *See* **Image 11**.

**Image 11**

⚠ Not Secure | oxybreath.club

40. Similar or identical text message advertisements were sent to thousands of putative class members' cell phones.

41. Because the putative class members' cellphones alert them whenever they receive a text message, each unsolicited text message transmitted by Navitelia invaded their privacy and, upon receipt, intruded upon their seclusion.

42. None of the recipients of the messages gave their prior express consent permitting Navitelia to send such text messages to them. In fact, Crena specifically replied at least two times saying that he did not wish to receive these text messages (*see* **Images 3** and **4**, above). Despite this request, Navitelia continued to send unsolicited messages to Crena in violation of the TCPA.

43. Moreover, even before Crena's replies "unsubscribing" from Navitelia's messages, Navitelia should have been on notice that Crena did not want to receive them, as he had the 0376 Number registered in the National Do Not Call List.

44. The unsolicited text messages sent to thousands of putative class members caused each class member damages, including the costs associated with loss of use of their cellular phones, interruption of other usage of their cellular phones, nuisance, annoyance, invasion of privacy, lack of sleep, mental anguish, other suffering, and/or additional costs incurred when the number of texts in a given month exceeded his/her cell phone data plan.

## **CLASS ACTION ALLEGATIONS**

45. Plaintiff re-alleges and incorporates by reference all the allegations contained in paragraphs 1 through 44.

46. Plaintiff brings this class action on behalf of himself and others similarly situated pursuant to Fed. R. Civ. P. 23(b)(2) and (3).

47. Plaintiff seeks certification of the following Class:

> **All persons in the United States who, between July 2, 2016, and the present, (1) received a non-emergency text in their cellular phones, (2) through the use of an ATDS, (3) from Navitelia, (4) regarding the future purchase of goods.**

The Class definition is subject to amendment as needed.

48. Excluded from the Class are Navitelia, its respective affiliates, subsidiaries, agents, board members, directors, officers, employees, any members of the judiciary to whom this case is assigned, their court staff, and Plaintiff's counsel.

### *Numerosity*

49. This class action satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1). The Class defined in this Class Action Complaint is sufficiently numerous that separate joinder of each member is impracticable as the Class will include thousands of members. Though Plaintiff does not know at the time of filing the exact number of putative class members, Navitelia claims to have reached over 50,000 customers, and thus the Class will likely be in the thousands.

### *Commonality and Predominance*

50. This class action satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2), and the predominance requirement of Fed. R. Civ. P. 23(b)(3), as the claims raise questions of law and fact common to each member of the Class and such questions predominate over questions affecting only individual members. These include, without limitation, the following:

 (a) whether Navitelia used an ATDS;

 (b) whether Navitelia used its ATDS to text consumer class members;

 (c) whether Navitelia's texts were sent due to an emergency;

 (d) whether Navitelia obtained express consent from the class members before messaging them;

 (e) whether Navitelia's conduct violates the TCPA;

 (f) whether Navitelia's conduct was negligent;

 (g) whether Navitelia's conduct was knowing and/or willful;

 (h) whether Navitelia is liable for damages and the amount of said damages;

 (i) whether Plaintiff and the other class members are entitled to declaratory relief; and

 (j) whether Navitelia should be enjoined from engaging in such conduct in the future.

*Typicality*

51. This class action satisfies the typicality requirement of Fed. R. Civ. P. 23(a)(3), as the claims made by Plaintiff are similar to those of the other class members. For example, most putative class members received the same type of non-emergency soliciting text messages and the texts were sent to them using an ATDS.

*Adequacy*

52. This class action satisfies the adequacy requirement of Fed. R. Civ. P. 23(a)(4) because Crena will fairly and adequately protect and represent the interests of each class member, since he has suffered the same wrongs as the other class members.

53. Further, Crena is well aware of his responsibilities as class representative and has retained Ayala Law, P.A., Garcia-Menocal, Irias & Pastori LLP, and Fulgencio Law PLLC as

counsel, all of whom are experienced in complex litigation and have the necessary resources to meet the costs and requirements of a case of this nature.

### *Superiority*

54.     This class action satisfies the superiority requirement of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy for a variety of reasons, including, without limitation, that it would be an inefficient use of judicial resources to require each putative class member affected by Navitelia's actions to bring their own claim. Moreover, the case deals with common issues of law that may be adjudicated uniformly in one single action without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would require.

### *Class action under Fed. R. Civ. P. 23(b)(2)*

55.     The prerequisites for maintaining a class action under Fed. R. Civ. P. 23(b)(2) also exist because by ignoring consumers' requests to stop text messages, Navitelia has acted or refused to act on grounds that apply to the entire class, making injunctive and equitable relief appropriate.

56.     Specifically, Plaintiff seeks an order declaring that Navitelia's text marketing tactics are in violation of the TCPA. Plaintiff also requests an injunction against Navitelia, preventing it from further taking advantage of unsuspecting class members, using the COVID-19 crisis as an opportunistic excuse to text them unsolicited.

### **COUNT I – VIOLATION OF THE TCPA**
### **47 U.S.C. § 227** *et seq.*

57.     Plaintiff incorporates paragraphs 1 through 56 fully in this Count.

58.     Plaintiff and each member of the Class received more than one text message sent by or on behalf of Navitelia during the class period. Additionally, all such messages were sent via the same dialing technology, which qualifies as an ATDS within the meaning of the TCPA, as

evidenced by the generic, impersonal nature of the text messages, the use of different phone numbers that are not the regular numbers of Navitelia, the repetitive nature of the texts, and the persistence of the texts even after "unsubscribing."

59. Neither Plaintiff nor any other class member provided his/her phone number to Navitelia.

60. Neither Plaintiff nor any other class member provided Navitelia with his/her prior express consent, within the meaning of the TCPA, to receive the autodialed text messages.

61. Navitelia's use of an ATDS to send text messages to telephone numbers, including Crena's 0376 Number and the numbers of all members of the Class, without their requisite prior express consent, constitute violations of the TCPA by Navitelia, including but not limited to violations of 47 U.S.C. § 227(b)(1)(A)(iii).

62. Navitelia's use of an ATDS to send text messages to the telephone numbers of class members registered on the National Do Not Call List constitute a willful and knowing violation of the TCPA as described in 47 U.S.C. § 227(b)(3)(C).

63. Navitelia's use of an ATDS to send text messages to the telephone numbers of class members, even after they "unsubscribed" to marketing texts they never consented to, constitutes a willful and knowing violation of the TCPA as described in 47 U.S.C. § 227(b)(3)(C).

64. Plaintiff and all class members are entitled to, and do seek, an award of $500 in statutory damages for each such violation of the TCPA committed by or on behalf of Defendant (or $1,500 for any such violation committed willfully or knowingly).

65. Plaintiff, individually and on behalf of the Class, seeks an award of attorneys' fees and costs to Plaintiff's counsel pursuant to Fed. R. Civ. P. 23.

**WHEREFORE**, Plaintiff Juan Crena respectfully requests a judgment in his favor and the Class as follows:

(a) injunctive relief sufficient to ensure Navitelia refrains from violating the TCPA in the future;

(b) statutory damages of $500 for Plaintiff and each putative class member for each of Navitelia's violations of 47 U.S.C. § 227(b) (or $1,500 for each such violation to the extent it was committed willfully or knowingly);

(c) an order certifying this action to be a class action pursuant to Fed. R. Civ. P. 23, establishing an appropriate class and any subclass(es) this Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the attorneys representing Plaintiff as counsel for the Class; and

(d) an award of attorneys' fees and costs to Plaintiff's counsel, payable from any class-wide damages recovered by the Class, pursuant to Fed. R. Civ. P. 23.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable pursuant to Fed. R. Civ. P. 38(b).

Dated: July 2, 2020

Respectfully submitted,

Eduardo A. Maura, Esq.
Luis F. Quesada Machado, Esq.
*Attorneys for Plaintiff*
**Ayala Law, P.A.**
1390 Brickell Ave, Ste 335
Miami, FL 33131
Telephone: 305-570-2208
Email: eayala@ayalalawpa.com

By: */s/ Eduardo A. Maura*
       Eduardo A. Maura
       Florida Bar No. 91303


Jorge Garcia-Menocal, Esq.
*Attorney for Plaintiff*
**Garcia Menocal, Pastori & Irias LLP**
368 Minorca Ave

Coral Gables, FL 33134
Telephone: 305-400-9652
Email: jgm@gmilaw.com

By: */s/ Jorge G. Menocal*
Jorge G. Menocal
Florida Bar No. 17990

Felipe Fulgencio, Esq.
*Attorney for Plaintiff*
**Fulgencio Law PLLC**
105 S Edison Ave,
Tampa, FL 33636
Telephone: 813-463-0123
Email: felipe@fulgenciolaw.com

By: */s/ Felipe Fulgencio*
Felipe Fulgencio
Florida Bar No. 95961